UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>VAUDENCIA CEBALLOS HAMILTON,<br><br>    Defendant. | Case No. 1:18-cr-00086-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Vaudencia Ceballos Hamilton's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 72. The Government has filed an opposition to Hamilton's Motion. Dkt. 73. Hamilton filed a reply and the matter is ripe for the Court's consideration. Dkt. 74.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On June 13, 2019, after pleading guilty to conspiracy to distribute fentanyl and methamphetamine resulting in serious bodily injury and death, the Court sentenced Hamilton to 240 months incarceration. Dkt. 51. Hamilton is currently incarcerated at the Federal Correctional Institution in Aliceville, Alabama ("FCI Aliceville").

On September 11, 2020, Hamilton submitted a request for compassionate release to the Reduction in Sentence ("RIS") Coordinator at FCI Aliceville. Dkt. 74, at 5. There is no record of response from staff at FCI Aliceville regarding Hamilton's request. On September 21, 2020, Hamilton filed a Motion for Compassionate Release with the Court. Dkt. 72. Hamilton cited her underlying health conditions, in conjunction with the COVID-19 pandemic, as reasons justifying her release.

## III. LEGAL STANDARD

Hamilton seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Hamilton submitted her request for compassionate release to FCI Aliceville staff on September 11, 2020. Dkt. 74, at 5. Neither the warden of FCI Aliceville, nor any other staff, responded to Hamilton's request. Hamilton then filed her motion for compassionate release with the Court on September 21, 2020. Dkt. 72. After the Government argued, in its response to Hamilton's motion, that Hamilton failed to prove she had exhausted her

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 3

administrative remedies, Hamilton attached a copy of her request for compassionate release to FCI Aliceville staff with her Reply Brief. Dkt. 74, at 5. Because there is nothing in the record to suggest the Warden responded to Hamilton's request either before or after the Government's response brief and Hamilton's reply, more than 30 days have lapsed since Hamilton submitted her September 11, 2020 request for compassionate release to the warden for FCI Aliceville.

The Court will consider the initial request for compassionate release attached to Hamilton's Reply Brief and finds Hamilton has exhausted her administrative remedies. Hamilton submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on September 11, 2020. Dkt. 74, at 5. Hamilton then filed her motion for compassionate release with the Court on September 21, 2020. Dkt. 72. The warden of FCI Aliceville has never replied. Under such circumstances, the Court finds Hamilton has exhausted her administrative remedies. Mondaca, 2020 WL 1029024, at *2.

### B. Extraordinary and Compelling Reasons

Having determined that Hamilton exhausted her administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Hamilton's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Hamilton bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 3:13-cr-0044-BR, 2020 WL 1673440, at 3 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id*. (explaining that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also*

MEMORANDUM DECISION AND ORDER - 5

*United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

The Court need not decide the issue, however, because Hamilton suggests one of the specific scenarios set out in the Sentencing Commission's policy statement applies in this case. *Brown*, 411 F. Supp. 3d at 451 (district courts "still must act in harmony with any sentencing policy guidelines that remain applicable and the § 3553(a) factors"). Here, Hamilton seeks compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[3] Hamilton argues that her Type 2 Diabetes and Hypertension, in conjunction with the COVID-19 pandemic, constitutes an

---

[3] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

MEMORANDUM DECISION AND ORDER - 6

extraordinary and compelling reason warranting her release.[4]

Hamilton's health conditions do place her at a higher risk of contracting a severe case of COVID-19. The CDC lists Type 2 Diabetes as an underlying health condition which places individuals at an increased risk of suffering severe illness from COVID-19, and Hypertension as an underlying health condition which might place individuals at an increased risk of severe illness from COVID-19. Additionally, the Government concedes that these conditions, coupled with the risk of COVID-19, presents an "extraordinary and compelling reason" to release Hamilton.

Despite this, there is no evidence to suggest that Hamilton would be at a decreased risk to contract the virus if she were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining in prison than they would be if released. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks

---

[4] Hamilton also argues she was diagnosed with Leukemia before incarceration, but has not provided any proof of this diagnosis.

MEMORANDUM DECISION AND ORDER - 7

where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"); *United States v. Shabudia*, 2020 WL 2464751, at *2 (N.D. Cal. May 12, 2020) (denying motion for elderly inmate with high cholesterol; observing that "while the Court acknowledges [defendant's] worries about the spread of COVID-19 in prisons, the facility in which [defendant] is housed currently has no confirmed cases of COVID-19"); *see also United States v. Wright*, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (denying motion for inmate with diabetes, noting, it appears "the BOP has been successful at limiting the spread of the virus within the MCC . . . despite the close proximity of inmates, the BOP is able to impose restrictions on visitors and restrictions on internal movements that are more difficult to impose outside prison walls. There is no reason to believe at this juncture that [defendant] would be at any less of a risk from contracting COVID-19 if he were to be released."); *United States v. Gamble*, 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020) (denying defendant with diabetes compassionate release where the BOP had contained the spread of the virus in the defendant's specific facility); *United States v. Seng*, 2020 WL 2301202, at *6–7 (S.D.N.Y. May 8, 2020) (stating "statistics support the inference that [defendant] would be more at risk of contracting COVID-19 were he released and required to stay in his apartment in Manhattan than he would be by remaining in FCI Allenwood Low," which had no reported cases); *United States v. Guyton*, 2020 WL 2128579 (E.D. La. May 5, 2020) (denying compassionate release to 45-year-old inmate with hypertension where there were no cases of COVID-19 at inmate's facility); *United States v. Shah*, 2020 WL 1934930 (E.D. Mich. Apr. 22, 2020) (denying compassionate release although defendant had diabetes and hypertension because there were no cases at defendant's facility

MEMORANDUM DECISION AND ORDER - 8

and because the BOP was making efforts to protect inmates).

Currently, FCI Aliceville —where Hamilton is incarcerated—has reported 60 cases of COVID-19 among inmates and 0 deaths.[5] Conversely, San Bernardino, California, where Hamilton would reside if released, has had over 258,742 cases of COVID-19, as well as 1,561 deaths.[6] Considering the high level of cases in San Bernardino, the Court cannot find that Hamilton would be at less risk if released into the community.

Finally, the Government asserts that there are compelling reasons *not* to release Hamilton, despite her health conditions. First, the Government contends Hamilton remains a danger to the community. Specifically, the Government highlights Hamilton's conviction of conspiracy to distribute fentanyl and methamphetamine resulting in serious bodily injury and death, as well as Hamilton's prior convictions—including other drug trafficking offenses—and notes these behaviors pose a substantial threat to the community. The Court agrees. The distribution of methamphetamine and fentanyl is a serious offense which perpetuates drug abuse in the community. Moreover, the amount of fentanyl and methamphetamine Hamilton was trafficking is extraordinary for the Idaho area. Dkt. 73, at 9. A lethal dose of fentanyl is only 3 milligrams. *Id*. On the date she was arrested, 957.8 grams of fentanyl was seized from Hamilton. *Id*. This constitutes over 300,000 lethal doses. *Id*. at 10. This alone illustrates the extreme danger to the community Hamilton's conduct imposed. Yet, Hamilton was also in possession of 894.2 grams of methamphetamine at the

---

[5] *Coronavirus*, FEDERAL BUREAU OF PRISONS (last updated Jan. 19, 2021), https://www.bop.gov/coronavirus/.

[6] *Covid-19 in San Bernardino*, San Bernardino County (last updated Jan. 21, 2021), https://sbcovid19.com/

MEMORANDUM DECISION AND ORDER - 9

time of her arrest. *Id*. at 9. As such, reducing Hamilton's term of incarceration from 240 months to 19 months does not adequately reflect the seriousness of her actions. Therefore, the Court agrees that the nature and circumstances of Hamilton's offense, as well as her history and characteristics, weigh heavily against granting her motion.

In sum, the Court finds that Hamilton has exhausted her administrative remedies and has demonstrated an "extraordinary and compelling reason" for her release. However, Hamilton has failed to show that such a reduction in her sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Hamilton at this time. Accordingly, the Court must DENY Hamilton's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Hamilton's Motion for Compassionate Release (Dkt. 72) is **DENIED**.

DATED: January 27, 2021

David C. Nye
Chief U.S. District Court Judge